UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| JOHN DOE 1, JOHN DOE 2, JOHN DOE 3, and JOHN DOE 4, individually and on behalf of all others similarly situated,<br><br>           Plaintiffs,<br><br>v.<br><br>CITY OF APPLE VALLEY,<br><br>           Defendant. | Case No. 20-CV-0499 (PJS/DTS)<br><br><br><br><br>ORDER |

Daniel E. Gustafson and Karla M. Gluek, GUSTAFSON GLUEK PLLC; Adele D. Nicholas; Mark G. Weinberg, for plaintiffs.

Monte A. Mills and Katherine M. Swenson, GREENE ESPEL PLLP, for defendant.

Section 130.08 of the Apple Valley City Code prohibits certain sex offenders from residing within 1500 feet of schools, child-care centers, places of worship, and parks.[1] *See* ECF No. 35-1. John Does 1–4 filed this lawsuit to challenge the constitutionality of § 130.08. This matter is before the Court on the motion of John Does 1, 2, and 4 (collectively, the "Does") for a preliminary injunction prohibiting Apple Valley from

---

[1]Section 130.08 also prohibited residence near "adult establishment (sexually oriented) businesses," ECF No. 35-1 at 2, but Apple Valley has amended § 130.08 to remove that prohibition, *see* ECF No. 54-1.

enforcing § 130.08 against them while this litigation is pending.[2]  Because the Does are

not likely to succeed in proving that § 130.08 is unconstitutional, the Court denies their

motion.

## I.  BACKGROUND

### A.  Section 130.08

On February 23, 2017, the Apple Valley City Council approved Ordinance

No. 1026.  ECF No. 35-1.  The ordinance implemented new restrictions on where certain

sex offenders are permitted to reside.  Those restrictions are codified at § 130.08 of the

Apple Valley City Code.[3]

Section 130.08 includes a statement of "findings and intent," which declares that

"[r]epeat predatory offenders, predatory offenders who use physical violence, and

predatory offenders who prey on children or individuals less than 16 years of age, are

predators who present a threat to the public safety."  ECF No. 54-1 at 1.  The stated

_____

[2]Apple Valley amended § 130.08 during the course of this litigation.  The parties agree that, as amended, § 130.08 does not apply to John Doe 3, and thus John Doe 3 is not seeking injunctive relief.  *See* ECF No. 56; ECF No. 13-5.

[3]Section 130.08 has been amended twice during the course of this litigation—first on April 9, 2020 by Ordinance No. 1073, and then on May 14, 2020 by Ordinance No. 1075.  *See* ECF Nos. 54-1, 67.  The April 9 amendment added a statement of findings and intent, clarified the definition of "designated offender," removed "[a]dult establishment (sexually oriented) businesses" from the list of protected zones, and added an exception for designated offenders who owned and resided at a residence at the time of committing the designated sexual offense if the offender has retained ownership of the residence at all relevant times.  ECF No. 54.  The May 14 amendment narrowed the definitions of public parks and places of worship.  ECF No. 67.

intent of § 130.08 is "to promote, protect and improve the health, safety and welfare of the citizens of the City, particularly children, by creating areas around locations where children regularly congregate in which certain sexual (predatory) offenders are prohibited from establishing residence."  *Id.*  To accomplish that goal, § 130.08 prohibits "designated offenders" from residing within 1500 feet of schools, public parks with playground equipment or other facilities designed or used for youth activities, places of worship providing regular educational programs for children, and licensed child-care centers (excluding in-home daycare providers).  ECF No. 67 at 2.  These restricted areas are referred to as "protected zones."  *Id.*  The Does allege that approximately 90 percent of the residential properties in Apple Valley fall within a protected zone.[4]  ECF No. 57 ¶ 21.

---

[4]The Does made this allegation in their amended complaint, which was filed before Apple Valley amended § 130.08 to narrow its scope in two respects:  (1) "[p]ublic park or playground" was replaced with "[p]ublic park with playground equipment or other public facility designed or used for youth activities, including recreation centers, ice arenas, and aquatic centers, as designated in Apple Valley's official parks list" and (2) "public place of worship that is maintained and controlled by a religious organization/body and at which regular educational programs are provided (e.g., Sunday school)" was replaced with "public place of worship that is maintained and controlled by a religious organization/body and at which regular educational programs for children are provided (e.g., Sunday school)."  *See* ECF No. 54-1 at 2; ECF No. 67 at 2. The record does not reflect how much of the residential area of Apple Valley falls within a protected zone in light of these amendments; presumably, the percentage is now below 90 percent.

Section 130.08 defines a "designated offender" as any person who (1) has committed a "designated sexual offense"[5] against a child under the age of 16, (2) is required to register as a predatory offender under Minnesota law as a result of having committed an offense against a child under the age of 16, or (3) has been categorized as a Level III sex offender under Minnesota law, regardless of the age of the offender's victim.  ECF No. 54-1 at 1–2.  In Minnesota, sex offenders receive a designation (such as a Level III designation) following an individualized risk assessment conducted by a review committee at the time that the offender is released from confinement.  *See* Minn. Stat. § 244.052, subd. 3.

Section 130.08 allows a designated offender to live within a protected zone if (1) the offender established and registered the residence prior to the implementation of the residency restriction; (2) the offender is under the age of 18 and living with a parent or legal guardian; (3) the offender established and registered the residence before a school, park, playground, place of worship, or child-care facility opened within 1500

---

[5]Section 130.08 defines a "designated sexual offense" as "[a] conviction, adjudication of delinquency, or [civil] commitment" involving a violation of Minn. Stat. § 609.342 (criminal sexual conduct in the first degree); § 609.343 (criminal sexual conduct in the second degree); § 609.344 (criminal sexual conduct in the third degree); § 609.345 (criminal sexual conduct in the fourth degree); § 609.352 (solicitation of children to engage in sexual conduct; communication of sexually explicit materials to children); § 609.365 (incest); § 617.23 (indecent exposure); § 617.246 (use of minors in sexual performance); § 617.247 (possession of child pornography); § 617.293 (dissemination and display of harmful materials to minors); or "a similar offense from another state."  ECF No. 54-1 at 2.

feet of the residence; or (4) the offender owned and resided at the residence at the time that he committed the designated offense and retained ownership at all relevant times. ECF No. 54-1 at 2–3.

Violations of § 130.08 are punishable as misdemeanors, and each day that an offender maintains a non-compliant residence is deemed to be a separate violation. *Id.* at 2. Under Minnesota law, a misdemeanor may be punished by a fine of up to $1000 and imprisonment of up to 90 days. Minn. Stat. § 609.02, subd. 3.

### B. The John Does

John Doe 1 was convicted of sexual assault of a minor in 2003, when he was 15 years old. ECF No. 13-3. *Id.* John Doe 1 is categorized as a Level I sex offender. *Id.* John Doe 1 rented an apartment in Apple Valley, but he moved after he was informed by the Apple Valley Police Department that he was violating § 130.08. *Id.*

John Doe 2 was convicted of possessing child pornography in 2018 and sentenced to seven years' probation. ECF No. 13-4. John Doe 2 was not assigned a risk level, and his name does not appear on any public sex-offender registry. *Id.* John Doe 2 purchased a home in Apple Valley in July 2018, but was forced to move in with his parents after he learned that § 130.08 prohibits him from living in his new home.[6] *Id.*

---

[6]After Apple Valley agreed not to enforce § 130.08 until the Court ruled on the Does' preliminary-injunction motion, ECF No. 21, John Doe 2 moved back into his home in Apple Valley, ECF No. 42 at 13.

John Doe 4 was convicted of misdemeanor indecent contact with a minor in 2002. ECF No. 49-1.  Like John Doe 2, John Doe 4 was not assigned a risk level, and his name does not appear on any public sex-offender registry.  *Id.*  John Doe 4 is currently living with his wife and five children at a friend's home in Apple Valley.  *Id.*  John Doe 4 received a letter from the Apple Valley Police Department informing him that he is prohibited from living at his friend's home under § 130.08.

## II.  ANALYSIS

The Does argue that § 130.08 violates the Ex Post Facto Clause of the United States Constitution because it increases the punishment for crimes committed before it was enacted.  The Does seek a preliminary injunction enjoining Apple Valley from enforcing § 130.08 while this lawsuit is pending.

### A.  Standard of Review

Courts consider four factors in deciding whether to grant a preliminary injunction:  (1) the movant's likelihood of success on the merits; (2) the threat of irreparable harm to the movant if the injunction is not granted; (3) the balance between that harm and the harm that granting the injunction will inflict on the other parties; and (4) the public interest.  *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981).  "'[A] preliminary injunction is an extraordinary remedy,' and 'the party seeking injunctive relief bears the burden of proving' that these factors weigh in its favor."

*Mgmt. Registry, Inc. v. A.W. Cos.*, 920 F.3d 1181, 1183 (8th Cir. 2019) (quoting *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003)).

### B. Likelihood of Success on the Merits

Ordinarily, a movant seeking a preliminary injunction need only establish a "fair chance" of prevailing on the merits. *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 730 (8th Cir. 2008) (en banc). "Fair chance" is often characterized as "something less than fifty percent." *Id.* But when a movant seeks to enjoin the enforcement of a "duly enacted state statute," the movant must make "a more rigorous threshold showing that the movant is likely to prevail on the merits." *Id.* This heightened standard "'reflects the idea that governmental policies implemented through legislation or regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly.'" *Id.* at 732 (quoting *Able v. United States*, 44 F.3d 128, 131 (2d Cir. 1995)).

The Eighth Circuit has instructed that, when a court must determine whether to apply this heightened standard to a motion to enjoin government actions other than the enforcement of a statute, the court must "evaluate whether the full play of the democratic process was involved in the actions . . . ." *D.M. by Bao Xiong v. Minn. State High Sch. League*, 917 F.3d 994, 1000 (8th Cir. 2019) (cleaned up); *see also Rounds*, 530 F.3d at 732 n.6. Here, the Court finds that § 130.08 resulted from "the full play of the

-7-

democratic process."  After community members raised concerns about sex offenders living in Apple Valley, the City Council directed that a draft ordinance be prepared for discussion.  ECF No. 34 ¶¶ 13–14.  The Patrol Captain for the Apple Valley Police Department helped to prepare the draft ordinance and then gave a presentation to participants at a "workshop meeting."  *Id.* ¶¶ 14–15; ECF No. 34-3.  The ordinance was subsequently discussed at a City Council meeting, adopted by unanimous vote, and signed by the Mayor.  ECF No. 35-1 at 4; ECF No. 35-6 at 4; ECF No. 35-7 at 4.  In short, there were multiple opportunities for members of the public to have input regarding the ordinance, the ordinance was discussed and voted on by the elected City Council members, and the ordinance was signed by the elected Mayor.  *Compare Xiong*, 917 F.3d at 1000–01 (finding that district court erred in evaluating a motion to enjoin the enforcement of Minnesota State High School League bylaw under the "likely to prevail" standard when the bylaw was not adopted by a democratically accountable body and was not subject to "lengthy public debate involving both the legislative and executive branches").  The Court therefore finds that the heightened "likely to prevail" standard applies to the Does' motion to preliminarily enjoin the enforcement of § 130.08.[7]

---

[7]*See also Evenstad v. City of West St. Paul*, 306 F. Supp. 3d 1086, 1093 (D. Minn. 2018) (finding that city ordinance was "enacted pursuant to a presumptively reasoned democratic process, if not a terribly deliberative one," and heightened "likely to prevail" standard was therefore applicable to plaintiff's preliminary injunction motion (citation and internal quotation marks omitted)); *Eliason v. City of Rapid City*, 306 F. Supp. 3d 1131, 1136 (D.S.D. 2018) (applying heightened "likely to prevail" standard

(continued...)

1. Ex Post Facto Framework

"The Ex Post Facto Clause of Article I, Section 10 of the Constitution prohibits the States from enacting laws that increase punishment for criminal acts after they have been committed." *Doe v. Miller*, 405 F.3d 700, 718 (8th Cir. 2005). To determine whether a law inflicts punishment in violation of the Ex Post Facto Clause, a court must apply the framework set forth in *Smith v. Doe*, 538 U.S. 84 (2003). First, the court considers whether the legislature intended the challenged law to impose criminal punishment. *Id.* at 92. If so, the inquiry is at an end and the law is deemed unconstitutional. If not, the court considers whether the law is nonetheless "so punitive either in purpose or effect as to negate" the legislature's nonpunitive intent. *Id.* (citation and quotation marks omitted).

*Smith* sets out five factors to guide courts in assessing whether a law that is not intended to be punitive is nonetheless sufficiently punitive in effect to violate the Ex Post Facto Clause. Specifically, *Smith* directs courts to consider whether "the regulatory scheme: [1] has been regarded in our history and traditions as a punishment; [2] imposes an affirmative disability or restraint; [3] promotes the traditional aims of

---

[7](...continued)
to motion to preliminarily enjoin enforcement of city ordinances); *Fort Des Moines Church of Christ v. Jackson*, 215 F. Supp. 3d 776, 793 (S.D. Iowa 2016) (same); *Carlson v. City of Duluth*, 958 F. Supp. 2d 1040, 1047 (D. Minn. 2013) (same); *Coalition to March on the RNC and Stop the War v. City of St. Paul*, 557 F. Supp. 2d 1014, 1020 (D. Minn. 2008) (same).

punishment; [4] has a rational connection to a nonpunitive purpose; or [5] is excessive with respect to this purpose." *Id*. at 97. These factors "are neither exhaustive nor dispositive," but are intended to be "useful guideposts." *Id*. (citation and quotation marks omitted). *Smith* instructs that "'only the clearest proof will . . . transform what has been denominated a civil remedy into a criminal penalty.'" *Id*. (quoting *Hudson v. United States*, 522 U.S. 93, 100 (1997)).

## 2. Eighth Circuit Precedent

The Eighth Circuit has twice applied *Smith* in analyzing the constitutionality of sex-offender residency restrictions similar to § 130.08. In both cases, the Eighth Circuit found that the restrictions did not violate the Ex Post Facto Clause.

In *Doe v. Miller*, 405 F.3d 700 (8th Cir. 2005), the Eighth Circuit considered a challenge to an Iowa statute that prohibited sex offenders who had committed certain crimes against minors from living within 2000 feet of a school or child-care facility. After determining that the purpose of the statute was not to punish but instead to protect the safety of children, the Eighth Circuit applied the five *Smith* factors to assess whether the law was nonetheless punitive in effect. *Id.* at 718–23.

(1) As to whether the statute imposes what "has been regarded in our history and traditions as a punishment": *Miller* rejected the plaintiffs' argument that the residency restriction was akin to banishment, which is a traditional form of punishment. *Id.* at 719–20. *Miller* pointed out that the Iowa statute did not expel offenders from the

-10-

community, nor did it bar them from traveling anywhere within the community, including within 2000 feet of schools or child-care facilities. The statute only prohibited offenders from *residing* within 2000 feet of schools or child-care facilities. The statute was therefore unlike banishment.[8]

(2) As to whether the statute "promotes the traditional aims of punishment": *Miller* acknowledged that the residency restriction could have both deterrent and retributive effects, and that deterrence and retribution are traditional aims of punishment. *Id.* at 720. But, *Miller* explained, "this factor must not be over-emphasized, for it can prove too much, as any number of governmental programs might deter crime without imposing punishment." *Id.* (cleaned up). Although the Iowa statute might indirectly deter sex offenses against minors, the "primary purpose of the law [wa]s not to alter the offender's incentive structure by demonstrating the negative consequences that will flow from committing a sex offense," but rather to protect the community. *Id.* Similarly, although the Iowa statute might have a retributive effect, the

---

[8]*See also Vasquez v. Foxx*, 895 F.3d 515, 521 (7th Cir. 2018) (rejecting argument that residency restriction is akin to banishment); *Shaw v. Patton*, 823 F.3d 556, 568 (10th Cir. 2016) ("In our view, the residency restrictions do not resemble the historical use of banishment. Mr. Shaw has not been expelled from a community, and he is free to go wherever he wishes in Oklahoma even if he cannot live in some areas."); *Wallace v. New York*, 40 F. Supp. 3d 278, 317 (E.D.N.Y. 2014) (finding that residency restrictions do not resemble banishment because they do not require an offender to abandon any particular area); *cf. Does #1–5 v. Snyder*, 834 F.3d 696, 701–02 (6th Cir. 2016) (finding that a statutory restriction that applied not only to an individual's residence, but also to where he or she may work or loiter, did resemble banishment).

same could be said for "any restraint or requirement imposed on those who commit crimes." *Id.* Because the residency requirement was "consistent with the legislature's regulatory objective of protecting the health and safety of children," the Court concluded that the statute's indirect promotion of the traditional aims of punishment did not weigh strongly in favor of finding the statute to be punitive. *Id.*

(3) As to whether the statute imposes an "affirmative disability or restraint": *Miller* explained that the relevant inquiry is the "degree of the restraint involved in light of the legislature's countervailing nonpunitive purpose" and cautioned that "the imposition of an affirmative restraint 'does not inexorably lead to the conclusion that the government has imposed punishment.'" *Id.* at 721 (quoting *Kansas v. Hendricks*, 521 U.S. 346, 363 (1997)). The *Miller* court "agree[d] with the Does that [the statute] does impose an element of affirmative disability or restraint," but found that "this factor ultimately points us to the importance of the next inquiry: whether the law is rationally connected to a nonpunitive purpose, and whether it is excessive in relation to that purpose." *Id. Miller* characterized this inquiry as the "'most significant factor' in the ex post facto analysis." *Id.* (quoting *Smith*, 538 U.S. at 102).

(4) As to whether the statute has "a rational connection to a nonpunitive purpose": *Miller* explained that "the requirement of a rational connection [to a nonpunitive purpose] is not demanding: A statute is not deemed punitive simply because it lacks a close or perfect fit with the nonpunitive aims it seeks to advance." *Id.*

-12-

(citation and quotation marks omitted).  *Miller* found that, "[i]n light of the high risk of recidivism posed by sex offenders, the legislature reasonably could conclude that [the statute] would protect society by minimizing the risk of repeated sex offenses against minors."  *Id.* (internal citation omitted).

(5)  Finally, as to whether the statute is "excessive with respect to this purpose": The district court had found that the statute was "excessive" with respect to its public-safety goal because it imposed residency restrictions "regardless of whether a particular offender is a danger to the public."  *Id.*  The Eighth Circuit disagreed, explaining that "[t]he absence of a particularized risk assessment . . . does not necessarily convert a regulatory law into a punitive measure, for '[t]he Ex Post Facto Clause does not preclude a State from making reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences.'"  *Id.* (quoting *Smith*, 538 U.S. at 103).  The Eighth Circuit held that the Iowa statute was not excessive with respect to its purpose of protecting minors even though it did not require individualized assessments of dangerousness, but instead categorically imposed residency restrictions on all offenders who had committed certain sexual offenses against minors.

A year after deciding *Miller*, the Eighth Circuit considered an ex post facto challenge to an Arkansas statute prohibiting Level 3 and Level 4 sex offenders from residing within 2000 feet of a school or daycare center.  *See Weems v. City of Little Rock*

-13-

*Police Dep't*, 453 F.3d 1010 (8th Cir. 2006). The Arkansas statute challenged in *Weems* was in some respects broader—but in other respects narrower—than the Iowa statute challenged in *Miller*. The Arkansas statute applied both to sex offenders who had victimized adults and to sex offenders who had victimized minors, whereas the Iowa statute applied only to sex offenders who had victimized minors. *Id.* at 1015. But whereas the residency restriction imposed by the Iowa statute was categorical, the residency restriction imposed by the Arkansas statute applied only to those who had been designated as Level 3 or Level 4 sex offenders following individualized assessments of their risk of re-offending. *Id.* at 1012–13.

The Eighth Circuit found that the Arkansas statute was "on even stronger constitutional footing than the Iowa statute," as the individualized risk assessment "increases the likelihood that the residency restriction is not excessive in relation to the rational purpose of minimizing the risk of sex crimes against minors." *Id.* at 1017. The Eighth Circuit explained that its analysis of the other *Smith* factors was controlled by *Miller* and concluded "that the Arkansas statute is not an unconstitutional ex post facto law." *Id.*

### 3. Application to § 130.08

Apple Valley does not dispute that § 130.08 applies retroactively to Does 1, 2, and 4, and the Does do not dispute that Apple Valley intended § 130.08 to be civil and nonpunitive. The Court therefore confines its analysis to the second step of the *Smith*

framework—that is, to assessing whether § 130.08 is so punitive in effect as to negate the City Council's nonpunitive intent.  *Smith*, 538 U.S. at 92.  Needless to say, the Court is not writing on a blank slate; instead, the Court's analysis of the five *Smith* factors is largely controlled by *Miller* and *Weems*.

(1) As to whether § 130.08 imposes what "has been regarded in our history and traditions as a punishment":  The Does argue that § 130.08 imposes banishment, which has historically been regarded as a form of punishment.  But the Does' argument is foreclosed by *Miller*.  Like the Iowa statute upheld in *Miller*, § 130.08 does not altogether ban the Does from their community, nor does § 130.08 restrict the ability of the Does to travel anywhere within that community.  *See Miller*, 405 F.3d at 719–20; *see also Evenstad v. City of West St. Paul*, 306 F. Supp. 3d 1086, 1096–97 (D. Minn. 2018) ("*Miller* forecloses Evenstad's argument that the residency restriction is banishment.").

(2) As to whether § 130.08 "promotes the traditional aims of punishment":  It is undoubtedly true, as the Does argue, that § 130.08 has both deterrent and retributive effects.  But § 130.08 does not appear to promote deterrence or retribution to any greater degree than the Iowa statute upheld in *Miller* or the Arkansas statute upheld in *Weems*.  Moreover, both the Supreme Court and the Eighth Circuit have made clear that whether

-15-

a law promotes the traditional aims of punishment is entitled to little weight in the

*Smith* analysis.[9]  *Smith*, 538 U.S. at 102; *Miller*, 405 F.3d at 720.

(3) As to whether § 130.08 imposes an "affirmative disability or restraint":

Section 130.08 clearly imposes a restraint on sex offenders by limiting the areas in which

they may reside.  But the same can be said of the statutes that were upheld in *Miller* and

*Weems*.  In this case (as in those), the degree of restraint is not so severe as to cause the

residency restriction to be punitive.  *Miller*, 405 F.3d at 720–21.

(4) As to whether § 130.08 has "a rational connection to a nonpunitive purpose":

Like the statutes that were upheld in *Smith*, *Miller*, and *Weems*, § 130.08 is rationally

related to the legitimate, nonpunitive purpose of protecting children from sexual

exploitation.  In *Smith*, the Supreme Court found that Alaska's registration scheme was

rationally related to its nonpunitive purpose in part because "[t]he risk of recidivism

posed by sex offenders is 'frightening and high.'"  538 U.S. at 103 (quoting *McKune v.

Lile*, 536 U.S. 24, 34 (2002)).  In *Miller*, the Eighth Circuit held that "[i]n light of the high

---

[9]The Does also argue that § 130.08 is incapacitating because it keeps sex offenders
away from locations where they might encounter children.  ECF No. 6 at 12.  The Court
disagrees.  Apple Valley's residency restriction is not incapacitating because "offenders
are not restricted from mere presence."  *Evenstad*, 306 F. Supp. 3d at 1097; *compare
Snyder*, 834 F.3d at 704 (finding incapacitating a statute that prohibited not only
residing, but also working and loitering, within 1000 feet of a school).  As the Does
themselves recognize, § 130.08 "only restricts Plaintiffs from *sleeping* in Apple Valley.
There is no prohibition on their being present in Apple Valley during the day when it is
much more likely that children will be present at parks, schools, or daycares located
within 1,500 feet of their homes."  ECF No. 6 at 25–26.

risk of recidivism posed by sex offenders, . . . the legislature reasonably could conclude that [Iowa's residency restriction] would protect society by minimizing the risk of repeated sex offenses against minors."  405 F.3d at 721; *see also id.* at 722 (finding that convicted sex offenders pose a "higher-than-average risk of reoffense").

The Does argue that the factual predicates on which the Eighth Circuit relied in *Miller* and *Weems* are unsupported or even contradicted by the evidence.  Residency restrictions are based on two assumptions: (a) that sex offenders reoffend at substantially higher rates than most other types of offenders, and (b) that barring sex offenders from living near schools and daycare centers will prevent sex crimes against children.  According to the Does, however, studies show (a) that sex offenders are actually less likely to reoffend than those convicted of other crimes, and (b) that residency restrictions do little or nothing to protect minors from being sexually exploited.[10]

---

[10]Specifically, the Does point to a 2007 study conducted by the Minnesota Department of Corrections, which in turn cites a 2002 study finding that "sex offenders are, compared to other offenders, among the least likely to reoffend."  Minn. Dep't of Corr., Residential Proximity & Sex Offense Recidivism in Minnesota., p. 5 (Apr. 2007) (citing P.A. Langan & D.J. Levin, Recidivism of Prisoners Released in 1994 (2002)).  The Minnesota study found that among sex offenders who do reoffend, the majority first come into contact with their victims through family members or significant others; in other words, the Minnesota study found that it is "[s]ocial or relationship proximity" rather than "residential proximity" that facilitates the sexual abuse of children.  *Id.* at 17. The Minnesota study also noted that, among recidivist sex offenders who first encounter their victims in public places, the majority of those contacts occur more than a mile from the offender's home.  *Id.* at 2–3, 13.

Having reviewed the evidence submitted by the Does, the Court has some sympathy for their argument.  But *Miller* and *Weems* remain binding on this Court, and thus the Does will have to make their argument to the Eighth Circuit.  *See Evenstad*, 306 F. Supp. 3d at 1097 ("Evenstad argues that the Ordinance lacks a rational connection to its stated purpose (because it . . . is not supported by evidence) . . . . To the extent that the Ordinance is coextensive with those upheld by the Eighth Circuit in *Miller* and *Weems*, his argument must fail.").  The Court finds, consistent with *Miller* and *Weems*, that § 130.08 is rationally related to the legitimate, nonpunitive purpose of protecting children from sexual exploitation.

(5) Finally, as to whether the statute is "excessive with respect to this purpose": The Does argue that, for a number of reasons, § 130.08 is excessive with respect to its purpose of protecting children from sexual exploitation:

First, the Does argue that § 130.08 is excessive because the group of "designated offenders" to whom the residency restriction applies is too broadly defined.  The Does argue that § 130.08 is similar in this respect to the ordinance that was challenged in *Evenstad v. City of West St. Paul*, 306 F. Supp. 3d 1086 (D. Minn. 2018).  In *Evenstad*, the court issued a preliminary injunction barring the enforcement of an ordinance restricting "designated offender[s] from living within 1200 feet of schools, licensed day care centers, and state licensed residential care or housing with service establishments." *Id.* at 1091.  That ordinance applied to any person who (a) had been convicted of a

"designated sexual offense" in which the victim of the offense was under the age of 16 or (b) was required to register as a sex offender under Minnesota law regardless of the offender's risk level and regardless of the age of the victim. *Id.* at 1092. The court found that by applying the residency restriction to *all* registered sex offenders—including those who had never shown any attraction to children or been individually assessed to pose a risk of harm to children—the ordinance went significantly beyond the types of residency restrictions upheld by *Miller* and *Weems*. *Id.* at 1099–1100.

Section 130.08 does not suffer the same flaw as the ordinance at issue in *Evenstad*. Section 130.08 applies only to offenders who (a) have committed certain sex crimes against victims under the age of 16 or (b) have received an individualized risk assessment and been designated as a Level III sexual offender (the highest risk category under Minnesota law). ECF No. 54-1 at 1–2. *Miller* approved the application of residency restrictions to the former type of offender, and *Weems* to the latter.

Second, the Does argue that § 130.08 is excessive with respect to its child-protection purpose because it categorically applies residency restrictions to all offenders who have committed certain sexual offenses against victims under the age of 16. The Does acknowledge that *Miller* explicitly approved the use of just such a categorical approach. *See* 405 F.3d at 722 (concluding "that a categorical rule is consistent with the legislature's regulatory purpose and not 'excessive' within the meaning of the Supreme Court's decisions"). The Does argue, however, that *Miller*'s approval of the categorical

approach was premised on the fact that Iowa was unable to perform individualized risk assessments in 2005. Because Minnesota can perform individualized risk assessments in 2020, the Does argue, § 130.08's categorical approach is excessive with respect to Apple Valley's goal of protecting children. *See* ECF No. 42 at 8–10.

The Does' attempt to distinguish *Miller* is refuted by *Miller* itself. *Miller* rejected the plaintiffs' argument that "the legislature must tailor restrictions to the individual circumstances of different sex offenders"—the same argument that the Does make here—because that argument was "inconsistent with the Supreme Court's direction that the 'excessiveness' prong of the ex post facto analysis does not require a 'close or perfect fit' between the legislature's nonpunitive purpose and the corresponding regulation." *Miller*, 405 F.3d at 722; *see also Smith*, 538 U.S. at 104 ("The State's determination to legislate with respect to convicted sex offenders as a class, rather than require individual determination of their dangerousness, does not make the statute a punishment under the Ex Post Facto Clause."). *Miller* did not in any way rely on the ability or inability of Iowa to conduct individualized risk assessments. This Court therefore rejects the Does' argument that § 130.08 is excessive because it applies categorically to all offenders who have committed specified crimes against victims under the age of 16.

Finally, the Does argue that § 130.08 has a broader geographical scope than the statutes upheld in *Miller* and *Weems*, and therefore is excessive with respect to its

-20-

purpose.  The Court disagrees.  Unlike the ordinance that was enjoined in

*Evenstad*—which prohibited residence near adult group homes, as well as near schools

and daycare centers, 306 F. Supp. 3d at 1090—§ 130.08 is focused exclusively on places

where children congregate: schools, licensed child-care facilities, parks with playground

equipment or other facilities designed for children, and places of worship that provide

regular educational programming for children.  ECF No. 67 at 2.

Both the Supreme Court and the Eighth Circuit have cautioned that the

excessiveness inquiry is not an exercise in determining whether a government body

"'has made the best choice possible to address the problem it seeks to remedy,' but

rather an inquiry into 'whether the regulatory means chosen are reasonable in light of

the nonpunitive objective.'"  *Miller*, 405 F.3d at 722 (quoting *Smith*, 538 U.S. at 105).

"A statute is not deemed punitive simply because it lacks a close or perfect fit with the

nonpunitive aims it seeks to advance."  *Smith*, 538 U.S. at 103.  Here, the lines drawn by

§ 130.08 are not perfect, but they are reasonable.  The Court finds that the Does are not

likely to succeed in showing that § 130.08 is excessive with respect to its purpose of

protecting children.

In sum, having reviewed all five *Smith* factors, the Court finds that the Does are

unlikely to be able to prove that § 130.08 is a punitive measure that runs afoul of the Ex

Post Facto Clause.  Because the Does seek to preliminarily enjoin the enforcement of an

ordinance that was subject to "the full play of the democratic process," the Does' failure

to establish that they are likely to succeed on the merits is fatal to their motion for a preliminary injunction. *See Rounds*, 530 F.3d at 737, n.11 ("Our characterization of the requirement for the movant to show that it is likely to prevail on the merits as a 'threshold' simply reflects that the court's consideration of the remaining *Dataphase* factors cannot tip the balance of harms in the movant's favor when the requirement is not satisfied."); *see also 1-800-441-Pain Referral Svc., LLC v. Otto*, 744 F.3d 1045, 1063 (8th Cir. 2014) (declining to preliminarily enjoin enforcement of state statute upon finding movant had not demonstrated a likelihood of success without discussing remaining *Dataphase* factors); *Fort Des Moines Church of Christ v. Jackson*, 215 F. Supp. 3d 776, 793 (S.D. Iowa 2016) ("[T]he court must make 'a threshold finding' that Plaintiff is likely to prevail on the merits of its motion with regard to both the State statutes and City ordinances before proceeding to consider the other [*Dataphase*] factors.").

ORDER

Based on the foregoing and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT plaintiffs' motion for a preliminary injunction [ECF No. 4] is DENIED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  September 16, 2020                    s/Patrick J. Schiltz
                                              Patrick J. Schiltz
                                              United States District Judge